DORSEY MOTORS, INCORPORATED, A CORPORATION, PROSECUTOR, v. CLARENCE R. DAVIS, BUILDING INSPECTOR OF THE TOWNSHIP OF WOODBRIDGE, A MUNICIPAL CORPORATION, RESPONDENT.

DORSEY MOTORS, INCORPORATED, A CORPORATION, PROSECUTOR, v. THE BOARD OF ADJUSTMENT OF WOODBRIDGE TOWNSHIP, A MUNICIPAL CORPORATION, RESPONDENT.

DORSEY MOTORS, INCORPORATED, A CORPORATION, PROSECUTOR, v. THE MAYOR, THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WOODBRIDGE AND THE TOWNSHIP OF WOODBRIDGE, A MUNICIPAL CORPORATION, RESPONDENTS.

Submitted July 24, 1935—Decided August 13, 1935.

Heard by Justice CASE, sitting alone, pursuant to the statute.

For the prosecutor, *Harry S. Medinets.*

For the respondents, *Leon E. McElroy.*

CASE, J. There are three writs of *certiorari.* The first brings up the action of Clarence R. Davis, building inspector of the township of Woodbridge, in refusing prosecutor's application for a building permit; the second, a resolution adopted by the board of adjustment, on appeal, recommending to the township committee that the latter refuse the application;

and the third, a resolution by the township committee denying the application. Respondents first challenge the pertinency of the writs and contend that there is nothing before the court for review.

In *Union County Development Co.* v. *Kaltenbach*, 3 *N. J. Mis. R.* 341; 128 *Atl. Rep.* 396, it was held that *mandamus* was a proper remedy to compel affirmative action by a building inspector who had refused a permit, and it was said that *certiorari* could not accomplish anything inasmuch as there was nothing before the court to be reviewed. To the same effect are the following decisions rendered simultaneously therewith or soon thereafter: *Falco* v. *Kaltenbach*, 3 *N. J. Mis. R.* 333; 128 *Atl. Rep.* 394; *State* v. *Dowling*, 3 *N. J. Mis. R.* 338; 128 *Atl. Rep.* 395; *Builders Realty Co.* v. *Bigelow*, 3 *N. J. Mis. R.* 540; 128 *Atl. Rep.* 887; *affirmed*, 102 *N. J. L.* 433; 131 *Atl. Rep.* 888; *Williams* v. *Gage*, 3 *N. J. Mis. R.* 1095; 130 *Atl. Rep.* 721. But see, also, in the light of the circumstances hereinafter mentioned, *Steinberg* v. *Bigelow*, 3 *N. J. Mis. R.* 1228; 131 *Atl. Rep.* 114, and *E. & M. Land Co.* v. *Newark*, 4 *N. J. Mis. R.* 467; 133 *Atl. Rep.* 413; also *Chancellor Development Corp.* v. *Newark*, 3 *N. J. Mis. R.* 1231; 131 *Atl. Rep.* 116. Later the zoning amendment and the enabling statute of 1928 were passed, and the practice by property owners dissatisfied with the findings of municipal officials or bodies has since been diverse. In *Steward* v. *Trenton*, 9 *N. J. Mis. R.* 1100; 156 *Atl. Rep.* 844, and particularly in *Mulleady* v. *Trenton*, 9 *N. J. Mis. R.* 1102; 156 *Atl. Rep.* 843, this court held that a writ of *certiorari* should properly issue to review the action of the zoning board in refusing to grant to the prosecutors a desired building permit and made quite clear that, in the opinion of the court, the compliance or non-compliance of a building code with the Zoning Enabling act and the reasonableness of a pertinent ordinance could be considered under a writ so issued. In *Deborah Jewish, &c., Society* v. *State Board of Health*, 7 *N. J. Mis. R.* 418; 145 *Atl. Rep.* 870, not a zoning case but involving a similar legal principle, it was held that it was the function of a writ of *certiorari* and not of a writ of *mandamus* to review the legality of the refusal of the

state board of health to grant a permit to erect and maintain a hospital, and *mandamus* was denied; and *certiorari* was successfully prosecuted in *Sheffield Farms Co., Inc.,* v. *Seaman,* 114 *N. J. L.* 455; 177 *Atl. Rep.* 372, to set aside the refusal of a health department to issue a milk-selling permit, and in *Linden Methodist Episcopal Church* v. *Linden,* 113 *N. J. L.* 188; 173 *Atl. Rep.* 593, to set aside a decision of a board of adjustment and to review an ordinance. In *DeVito* v. *Pearsall, &c., Borough of Rumson,* 115 *N. J. L.* 323, the writ of *certiorari* brought up, without objection as to procedure, the borough zoning ordinance, the refusal of the borough building inspector and, on appeal, of the board of adjustment to grant a permit. In *Gabrielson* v. *Borough of Glen Ridge,* 13 *N. J. Mis. R.* 142; 176 *Atl. Rep.* 676, the application was for *certiorari* to review and *mandamus* to compel.

The writs in the instant case do not, in terms, bring up the zoning ordinance. But the ordinance is, by stipulation, in proof before me. The writs were allowed following rules to show cause why they should not issue. No objection was voiced by the respondents on the ground now under discussion, and it was my distinct impression from the presentations by both attorneys then made that *certiorari* would be an acceptable means of resolving the doubt as to whether the borough zoning ordinance was or was not valid in setting up as a residence zone that portion of Amboy avenue in which prosecutor's property is located and that it was desirable that such doubt should be determined.

The reasons filed by the prosecutor fully set up the alleged defects of the ordinance. The prosecutor, in reliance upon the procedure so begun upon notice, has gone to the expense of preparing his case. The facts, ample in volume, are in proof. The petition of appeal to the board of adjustment was upon the specific and expressed ground that the ordinance was, in its application to prosecutor's property, arbitrary and unreasonable and without substantial relation to any of the purposes authorized by the statute, and it is stipulated that the decision of the board "was based solely upon the circumstance that it would be a non-conforming use in

an area zoned as Class 'A' Residential, and would affect the value of existing residences on Amboy Avenue and Green Street." The question of the ordinance and its validity in so far as concerns the Ross street-Grove avenue exception has been the outstanding dispute throughout. The meritorious question is argued in the briefs; not only that, but respondents' brief concedes that it was fully presented below by the prosecutor. All of the parties, including the municipality, are in court and have been heard on the merits. By virtue of the circumstances under which the case has come in I feel that under the more recent cases I should declare a finding on whether or not so much of the ordinance as places prosecutor's property in a residence zone is a reasonable and lawful exercise of the municipal legislative power.

Prosecutor's property is located at the southwest corner of Amboy avenue and Green street and has frontages of approximately one hundred and fifty feet on Amboy avenue and ninety-eight feet on Green street. It is a stipulated fact that "Amboy avenue in its entirety is part of state highway route 4, one of the most traversed [traveled?] highways of the State of New Jersey, bearing the brunt of traffic between the metropolitan area, including New York City and north Jersey, and the shore points, with automobiles, motor buses and trucks creating the inevitable noises that are concomitant with the operation of such vehicles on the highway; that whatever residences located along such road on Amboy avenue are so situated that the people within them are constantly subjected to such traffic noises; that such conditions existed at the times of the construction of such dwelling houses and of the adoption of the zoning ordinance." The records of the state highway commission show that Amboy avenue has an average daily volume throughout the year of sixteen thousand one hundred and thirteen vehicles. At the intersection with Green street there is an automatic traffic signal which results in almost constant stopping and starting of vehicles at that point. The ordinance zones the entire southerly end of Amboy avenue for business and light and heavy industrial uses except the distance from Ross street to Grove avenue, about one thousand six hundred and fifty feet, which is zoned

as class "A" residential. Prosecutor's property is, roughly, at the center of that excepted area. The character of this area is substantially the same as that of the rest of Amboy avenue from which it has been set off. It is a stipulated fact that "the plans and specifications submitted to the building inspector of the township of Woodbridge, covering said proposed structure complies with all rules, regulations, ordinances and building codes of the township of Woodbridge, now in force, at the time of the filing thereof," and that the application complied with all requirements.

The parties have stipulated that the testimony before the board of adjustment was substantially, in part, as follows: "That at the time of the adoption of said zoning ordinance and since that time, there were and still are located and used in that part of Amboy avenue set aside for Class 'A' Residential purposes by said zoning ordinances the following business properties and uses:

"1. Parkway Garage with three gas tanks in front.

"2. Eak's Welding and Radiator Shop with second-hand motor vehicles in front thereof.

"3. Franklin Soda Shop.

"4. Alice LaReine Dressmaking Shop.

"5. Greenhouse and flower shop.

"6. Furniture and pottery store.

"7. Boarding house.

"8. The Great Atlantic and Pacific Tea Store.

"9. Woodbridge Fur Shop.

"10. Candy store.

"11. Grocery store.

"12. Club rooms.

"13. Shoe repair shop.

"14. Two-car frame garage facing street.

"15. One-story frame roadstand;

that within the said area set aside as Class 'A' Residential zone, there are thirteen one-family residences which conform to the ordinance." I find, from the proofs, the assertions so made to be the fact. Green street is a residence street, but Amboy avenue throughout the entire distance set off for residence purposes bears the unmistakable signs of a surrender

to business uses that is almost inevitable under the prevailing conditions.

The zoning ordinance was adopted in 1931. Since then not a single residence has been constructed within the zoned area. An expert employed as consultant by the township authorities in the preparation of the zoning ordinance and who, it is stipulated, "is a nationally recognized authority on zoning and city planning," advised in the original formation of the ordinance that Amboy avenue be zoned as a business district without exception. His deposition taken in preparation for this argument states:

"To change that portion of Amboy Avenue between Ross Street and Grove Avenue from Class 'A' residence zone to business zone, will in nowise do violence to the zoning plan as a whole in Woodbridge. It merely involves the restoration of this section to the position it occupied in the original tentative zoning plan. This plan was devised in the light of experience obtained during many years in zoning numerous municipalities in various parts of the country. There was no practical reason for changing the original decision as to the appropriateness of a business designation in this area. A business designation for the frontage of this portion of the street is the only way in which the zoning plan will do justice to the property owners immediately affected in this area."

The only conclusion to which I can come under the uncontroverted facts is that the exclusion of ordinary business from the disputed portion of Amboy avenue was an unreasonable and capricious act on the part of the township committee. Conceding to the municipality an authority to create residence zones and, with reasonable regard for an actually existing status, to shield those areas from the intrusion of commercial structures (*DeVito* v. *Pearsall, &c., Borough of Rumson, supra*), nevertheless the municipality could not by a word change the cold facts. It may not arbitrarily and without justification interfere with the legitimate use of private property. *Gabrielson* v. *Glen Ridge, supra*. Respondents do not seriously dispute the business aspect of Amboy avenue. Their argument is built up largely on the fact, which I think is well sustained, that Green street is a residence street. The

controlling thoroughfare in this instance, however, is Amboy avenue. It is unfortunate that a residence street crosses that busy and business thoroughfare; but it does cross and must suffer whatever inconvenience results therefrom.

There was no *laches* on the part of the prosecutor. When he desired to improve his plot, he sought a permit to carry out the improvement and, on denial, moved speedily from one municipal body to another and thence to this court. Had there been *laches* respondents should have raised the objection on the return of the rule. *Weissinger* v. *Mayor, &c., Teaneck,* 10 *N. J. Mis. R.* 1093; 162 *All. Rep.* 400.

It results that so much of the zoning ordinance as takes the prescribed area out of the business zone is invalid. The determinations under review, clearly based on that ordinance provision, should be set aside; with costs against the township.