HOME FUEL OIL COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PROSECUTOR, v. THE BOROUGH OF GLEN ROCK, IN THE COUNTY OF BERGEN, AND JOHN J. HARTNETT, RECORDER OF THE BOROUGH OF GLEN ROCK, DEFENDANTS.

Submitted January 19, 1937—Decided June 8, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the prosecutor, *Doughty & Dwyer* (*Spaulding Frazer,* of counsel).

For the defendants, *Thomas L. Zimmerman, Jr.*

The opinion of the court was delivered by

PERSKIE, J. The writ of *certiorari* in this cause brings up for review a judgment, "with all things touching and concerning the same," in the Recorder's Court of the borough of Glen Rock which resulted in the conviction and sentence of the prosecutor (a penalty of $50 was imposed) for having violated the zoning ordinance of the borough.

At the outset, let it be observed that, as in *Dorsey Motors, Inc.,* v. *Davis,* 13 *N. J. Mis. R.* 620 (at *p.* 622) ; 180 *Atl. Rep.* 396, the writ here does not, in express terms, bring up the ordinance. Counsel for defendants, however, takes the position (second sentence of the first paragraph of his brief) that the writ "* * * of necessity brings up the validity of the zoning ordinance." Be that as it may, the ordinance is, in fact, before us. Its applicable provisions are fully considered and argued by counsel for the respective parties. We shall treat these arguments accordingly.

Prosecutor was charged with having violated sections II, III and IV, especially subdivision 26 of section IV, of the ordinance. These sections are as follows:

"Section II. Use Regulations Controlling Residential Zones : * * * A fuel oil tank of not more than 2,000 gallons capacity, is permitted if placed not less than eighteen (18″) inches underground outside of every building wall provided a permit is secured from the Building Inspector in the regular manner.

"Section III. Use Regulations Controlling Business Zones : * * * Fuel oil tanks for heating or industrial purposes if not more than 5,000 gallons capacity each, may be

installed, not less than two (2') feet underground in any business or industrial zone by obtaining a permit from the Building Inspector.

"Section IV. Use Regulations Controlling Industrial Zones: In an industrial zone, no building or premises shall be used, and no building shall be erected or altered which is arranged, intended or designed to be used for any of the following specified trades, industries or uses:

"(26). Petroleum, refining or storage of, in excess of 10,000 gallons, or Fuel Oil refining or storage in excess of 90,000 gallons, 15,000 gallons in any tank, which must be buried at least three feet underground if within 200 feet of any dwelling or building used as such."

More specifically the charge is that prosecutor violated the last quoted provision of the ordinance in that it commenced the erection, and is maintaining a tank designed to store three hundred and sixty thousand gallons of fuel oil on its tract of land which is admittedly in the class "B" residential zone under the ordinance.

In the main, the facts are not in serious dispute. Prosecutor's tract, over one hundred and twenty thousand square feet, borders on the Erie Railroad. It was purchased by Joseph Marron in 1913 and used in the conducting of the coal distributing business until 1927. During that period Marron erected a number of coal pockets, a large concrete silo, and other buildings essential to the operation of the enterprise. The prosecutor corporation was formed in 1927 by Marron and his son for the purpose of engaging in the business of selling fuel oil in Glen Rock and surrounding cities. The tract of land which theretofore had been used solely for the coal enterprise was transferred to the new corporation. During 1927 six oil tanks were constructed on the tract. On application, the board of adjustment made an exception and permitted the prosecutor to erect four tanks with a capacity of twenty thousand gallons each and two tanks with a capacity of ten thousand gallons each.

The demand for fuel oil increasing in the Glen Rock vicinity, prosecutor found its storage facilities inadequate.

Consequently, on March 5th, 1936, it made application to the building inspector to construct the tank in question. It is proposed to let the tank stand in a vertical position; the others were placed in a horizontal position. Informal plans and specifications (consisting of one sheet, *Exhibit P-3a*) were submitted, and on March 5th, 1936, the building department issued a permit to prosecutor (*Exhibit P-1*) for the erection of the tank and for which the prosecutor paid a fee of $6. This permit contains the statement that the total cost of the tank is $1,600; and that it is "subject to all rules and regulations of the Building Code, Zoning Ordinance * * * of the Borough." While it is claimed that the plans and specifications aforesaid show the size, capacity and dimensions of the tank yet the permit does not appear to bear out that statement. It is silent on the gallon capacity of the tank. Thereafter prosecutor entered into a contract with a Chicago concern, which for about $3,000 agreed to construct the tank, and the construction work was begun about two months from the date of the permit. Two of the existing six tanks were removed and in their place the new tank was partially erected when on May 4th, 1936, prosecutor was notified by the building inspector (*Exhibit P-3*) that the permit had been erroneously granted, that it was revoked, and that since the structure was in violation of the zoning ordinance (subdivision 26 of section IV) it should be removed. The prosecutor ceased further work thereon but refused to remove the partially completed tank.

Thereupon prosecutor took an appeal to the board of adjustment. A public hearing was had on September 17th, 1936, at which hearing prosecutor appeared, participated and was there represented by counsel. The board concluded that the permit was improperly granted (*i. e.*, contrary to the provisions of the zoning ordinance, as aforesaid), and therefore properly revoked and denied prosecutor's request for a permit to erect the tank. That disposition stands unchallenged. Prosecutor took no proceeding to review the adverse action and the time limit for so doing has now long since expired. *Pamph. L.* 1928, *pp.* 696, 702, § 9. Notwithstanding prose-

cutor's failure to review the action of the board of adjustment, it now not only seeks to review the judgment of conviction by the recorder but also seeks to review the action of both the building inspector in revoking the permit, the action of the board of adjustment in sustaining the revocation and refusing to grant it a permit, and further to review the reasonableness of the zoning ordinance as applied to it.

In support of its right to do so, prosecutor argues (1) that it is entitled to its permit because the tank is a mere continuance of a non-conforming use which it enjoyed at the time of the adoption of the zoning ordinance (*Pamph. L.* 1928, *supra, p.* 703, § 11); (2) that to deprive it of the right to complete the tank and maintain it on its lands is to deprive it of the use of its property without due process of law in violation of the federal and state constitutions; and (3) that because it had awarded the contract and incurred substantial expense without having practiced any fraud or misrepresentation in obtaining the permit, defendants were estopped to revoke the permit. *Freeman* v. *Hague,* 106 *N. J. L.* 137; 147 *Atl. Rep.* 553. There is no merit to any of the points argued.

*First:* The right of a property owner to a continuance of a non-conforming use is well defined. The spirit of the act is to restrict rather than increase any non-conforming use. *Conaway* v. *Atlantic City,* 107 *N. J. L.* 404 (at *p.* 407); 154 *Atl. Rep.* 6; *Devito* v. *Pearsall,* 115 *N. J. L.* 323 (at *p.* 325); 180 *Atl. Rep.* 202. "* * * the continuance of a non-conforming use is a continuance of the same use and not of some other kind of use." *Kensington Realty, &c., Corp.* v. *Jersey City,* 118 *N. J. L.* 114 (at *p.* 115); 191 *Atl. Rep.* 787. Here, at the time of the adoption of the original zoning ordinance in 1922 or 1923 (present ordinance was passed October 28th, 1929), prosecutor used its premises for the coal business. When, in 1927, it entered into the fuel oil business it obtained permission to erect oil tanks. Now it is proposed to increase the storage capacity from about one hundred thousand gallons to four hundred and forty thousand gallons. The facts in the case of *Frank J. Durkin Lumber Co.* v.

*Fitzsimmons,* 106 *N. J. L.* 183; 147 *Atl. Rep.* 555 (the business of storing lumber on the premises was the same after the passage of the zoning ordinance as it was prior thereto) and *Lamb* v. *A. D. McKee, Inc.,* 10 *N. J. Mis. R.* 649; 160 *Atl. Rep.* 563 (the whole lot was used for excavating purposes even though only a part of it was actually dug), are clearly distinguished from the facts in the case at bar.

*Second:* There is proof that the tank erected is to be of all steel and gas tight construction and conforms to the modern type, endorsed and recommended as safe for oil storage by the National Board of Fire Underwriters, and others. It is sufficient for present purposes to observe that there is proof of the general character of the *locus in quo,* the various types of business, activities and homes. But there is also proof that the insurance rates would be increased if the tank is erected and maintained; that without a dike and without foam provisions, neither being provided in the plans and specifications for the tank sought to be erected, the erection and maintenance of the tank is considered by the rating board of the state as an increased fire hazard. The inhibition of the ordinance is therefore not arbitrary or unreasonable as for instance in *Gabrielson* v. *Glen Ridge,* 13 *N. J. Mis. R.* 142; 176 *Atl. Rep.* 676; *Dorsey Motors, Inc.,* v. *Davis, supra,* and *Feller* v. *Board of Zoning Adjustment, Glen Rock,* 14 *N. J. Mis. R.* 247; 183 *Atl. Rep.* 684. It is strictly within the objects set forth in section 5 of *Pamph. L.* 1928, *supra,* namely: "* * * to secure safety from fire, panic and other dangers," and, moreover, bears a direct relation to public health and safety. *Nectow* v. *Cambridge,* 277 *U. S.* 183; 72 *L. Ed.* 843; *State of Washington* v. *Roberge,* 278 *U. S.* 116; 73 *L. Ed.* 210. The act of 1928 provides adequate opportunity of review to all aggrieved by reason of any action taken thereunder. The act trenches upon no federal or state constitutional inhibition. *Cf. Garford Trucking Co.* v. *Hoffman,* 114 *N. J. L.* 522, 532; 177 *Atl. Rep.* 882.

*Third:* The defendants were not estopped to revoke the permit erroneously issued to the prosecutor. Passing the circumstances here exhibited which are not altogether free

from the inference of fraud and deceit in obtaining the permit, it is now well settled that the principle laid down in *Freeman* v. *Hague, supra,* pronounced prior to the passage of the Zoning act of 1928, has no application to the case at bar. In *Dickinson* v. *Plainfield,* 13 *N. J. Mis. R.* 260; 176 *Atl. Rep.* 716, this court, by Mr. Justice Case, held that the efficacy of a permit obtained from an unauthorized officer to do a forbidden act does not forestall consideration thereof by the lawfully designated tribunals even though the holder of the permit proceeds quickly to incur obligations and expenses by virtue of the permit. That decision was affirmed by our Court of Errors and Appeals. 116 *N. J. L.* 336; 184 *Atl. Rep.* 195. And in the case of *Horwitz* v. *Jones,* 12 *N. J. Mis. R.* 375; 171 *Atl. Rep.* 552, this court, by Chief Justice Brogan, was careful to point out that it was not there contended that any building code or zoning ordinance of the municipality had been violated.

*Fourth:* Notwithstanding the position taken by counsel for defendants, namely, that the writ does bring up the validity of the zoning ordinance, and the further fact that the *allocatur* was allowed, it is, nevertheless, argued for defendants that since prosecutor failed to review the action of the board of adjustment in denying its appeal, that it is now barred, in this proceeding which is to review a conviction before the recorder, from reviewing the facts and circumstances upon which the board of adjustment based its judgment. We think that the point is well taken.

The law is, of course, well settled "that an ordinance will not be set aside on *certiorari* as unreasonable unless it is unreasonable *in toto,* and that attack on any part of it involving a penalty for disobedience must await a conviction thereunder." *Neumann* v. *Hoboken,* 82 *N. J. L.* 275; 83 *Atl. Rep.* 511; *Payne* v. *Seabright,* 14 *N. J. Mis. R.* 756; 187 *Atl. Rep.* 627. But that is not the principle of law to be invoked to the facts and circumstances here exhibited. Here we are called upon to determine a question of practice and procedure which is fundamental, and, which, in our opinion, is altogether different from that which was involved in the

cases of which Neumann v. Hoboken is typical. Under the act of 1928, *supra,* the legislature prescribed the *modus operandi* for one aggrieved. Prosecutor, as already observed, properly followed that procedure to the point of an adverse determination by the board of adjustment of its appeal. It then permitted that determination to stand unchallenged. It did not exhaust the statutory provision of appeal. Prosecutor should not under these circumstances be permitted to resurrect the issues and determinations of the board of adjustment in this cause when its right to do so, in a direct attack, under the statute, has long since expired.

We are, of course, not unmindful of the principle that failure to exhaust statutory remedies is not always fatal to the granting of a writ of *certiorari* by this court. *Conaway* v. *Atlantic City, supra.* (See especially the discussion and analysis of the cases in that case beginning with the last paragraph at pages 407 and 408.) The facts, however, in the Conaway case are clearly distinguishable from those in the present case. But even if they were not distinguishable, the rule requiring the exhaustion of statutory remedies is, in the words of Mr. Justice Parker, in the Conaway case, "* * * a rule of policy, convenience and discretion rather than of law, particularly as the prerogative powers of this court are protected by the constitution from legislative changes." We are, therefore, of the opinion that the prosecutor should not be permitted to collaterally review the action of the board of adjustment in this cause. To hold otherwise would not only lead to a practice contrary to the provisions of the statute but would lead to confusion and disorder. It should not be sanctioned. The orderly practice to be followed by one aggrieved, under the statute, and to test the reasonableness *vel non* of a zoning ordinance is prescribed by the statute and should be observed. *Payne* v. *Seabright, supra; Crescent Hill, Inc.,* v. *Borough of Allendale,* 118 *N. J. L.* 302.

The suppositious circumstance suggested in *Payne* v. *Seabright* (at *p.* 758), (absence of an ordinance requiring preliminary application and submission of plans), is not made to appear in the case at bar. The fact that prosecutor obtained

a building permit completely negatives the absence of a building ordinance.

The judgment of conviction is affirmed, and the writ is dismissed, with costs.