WATCHUNG LAKE, INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, AND PLAINFIELD LUMBER AND SUPPLY COMPANY, PROSECUTORS, v. GEORGE MOBUS, CLERK OF THE BOROUGH OF WATCHUNG, IN THE COUNTY OF SOMERSET, AND BOROUGH OF WATCHUNG, OF THE COUNTY OF SOMERSET, RESPONDENTS.

Submitted October 5, 1937—Decided January 8, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutors, *Andrew L. McDonough* and *Merritt Lane.*

For the respondents, *Horace E. Bunker* and *Spaulding Frazer.*

BODINE, J. The writ of *certiorari* in this case brings up for review the action of the borough council of Watchung in declining to grant the application of the prosecutor for a renewal of its license to operate its bathing facilities at Watchung Lake under an ordinance adopted by the borough council on December 8th, 1932, prohibiting the maintenance of a bathing establishment for profit without a permit. The writ also brings up the action of the borough council in passing an ordinance on April 22d, 1937, entitled: "An ordinance to regulate swimming or bathing in the waters of, in, or bounding the Borough of Watchung," and providing that bathing and swimming in the waters of, in, or bounding the borough of Watchung, should be regulated and restricted to the owner of dwelling premises lying along or partly covered by such waters, for his own or his family's use, and the uses of the guests of his household, and providing for a penalty not exceeding $200 for each and every offense, or imprisonment not exceeding ninety days, or both, in the discretion of the court and each and every day during which such violation should continue should be construed as a distinct and separate violation, and this ordinance also repealed the ordinance adopted December 8th, 1932, under the terms of which prosecutor, Watchung Lake, Incorporated, held the permit, the renewal of which it now seeks.

Watchung Lake, for many years, was used as a source of ice. Since 1930, the prosecutors have conducted a bathing establishment upon the shores of the lake. Natural ice the public no longer desires. Since opening the lake for bathing, prosecutor has expended a large sum of money upon the property until the present value is approximately $125,000. The lake would have little value except for bathing. A beach has been built and a portion of the lake has been covered with a concrete floor. The bathing area is marked for a space approximately two hundred feet wide by four hundred feet long. Lifeguards are on duty at all times. The president of the company is a West Point graduate and a sanitary engineer of experience. The waters are chlorinated and the equipment and construction appear to be of the best

design to insure the health and safety of those using the pool, and the proofs indicate that such has been the result.

We are not concerned with the refusal to issue the license since prosecutor has already operated during the year 1937. The real question in the case is whether the borough properly exercised its powers under the Home Rule act. *Pamph. L.* 1917, *p.* 352, as amended, *Pamph. L.* 1932, *p.* 151.

The persons residing in the neighborhood objected to the lights, the loud speaker, the parking of automobiles, the crowds who frequent the pool and the general use of the premises for commercial bathing purposes. Undoubtedly, the state board of health had power to deal with any matter affecting the health and life of the citizens of the state, but since the borough also had power to regulate or prohibit swimming or bathing in waters of, in, or bounding the municipality it is necessary to determine whether the ordinance under review was a reasonable exercise of the police power. *Frank J. Durkin Lumber Co.* v. *Fitzsimmons,* 106 *N. J. L.* 183; *Gabrielson* v. *Glen Ridge,* 13 *N. J. Mis. R.* 142; *Felter* v. *Board of Zoning Adjustment of the Borough of Glen Ridge,* 14 *Id.* 247; *affirmed,* 117 *N. J. L.* 532; *Neclow* v. *Cambridge,* 277 *U. S.* 183; 72 *L. Ed.* 842, cited by the Supreme Court of this State in Gabrielson *v.* Glen Ridge; *State of Washington* v. *Roberge,* 278 *U. S.* 116; 73 *L. Ed.* 210.

The Supreme Court of the United States in *Dobbins* v. *Los Angeles,* 195 *U. S.* 223, cited, with approval, the following language from *Lawton* v. *Steele,* 152 *Id.* 133: "To justify the state in thus interposing its authority in behalf of the publc it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a

proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

In *Passaic* v. *Paterson Bill Posting Co.*, 72 *N. J. L.* 285 (at *p.* 286), Mr. Justice Swayze for the Court of Errors and Appeals said: "It is obvious that the effect of the ordinance is to deprive the landowner of the ordinary use for a lawful business purpose of a portion of his land. Such deprivation is a taking within the meaning of the constitutional provision (*Trenton Water Power Co.* v. *Raff,* 7 *Vr.* 335, approved by this court in *Pennsylvania Railroad Co.* v. *Angel,* 14 *Stew. Eq.* 316), and where no compensation is given to the landowner the taking can only be justified if it is done in the exercise of the police power of the state. * * * In our opinion the legality of the ordinance does not depend upon the possibility of danger thus suggested, but upon whether such a regulation is reasonably necessary for the public safety. There must always be a possibility of danger from the erection of any structure and from its decay, but such a possibility is not sufficient to justify the municipal authorities in depriving a man of the ordinary use of his land."

From our examination of the record, it seems that the real purpose of the council in adopting the ordinance under review was its fear of the depreciating effect of the operation of the pool upon the real estate values of that community. The proofs examined do not satisfy us that there was any nuisance with respect to noise, parking of cars, lights and other matters complained of sufficient to justify the prohibition of the use of prosecutor's property for a pool use to which it is now only suited. There is an abundance of testimony in the case respecting the purity of the water for bathing purposes, and it is entirely apparent that the waters of the lake, frequently examined and properly chlorinated, furnish reasonably safe bathing facilities.

The ordinance, in so far as it limits bathing to the owner of premises lying along the lake and for his own and family use, and the use of the guests of his household, was clearly unreasonable and would amount to a confiscation of prosecu-

276

tors' property. If the lake was safe for the owner of premises and his guests, it was equally safe for the public paying a fee for its use to one having, under lawful grant, set up a bathing establishment upon its borders upon lands leased or owned. A well conducted bathing establishment is not a nuisance and to exclude an owner from making a use of his land that was in all respects proper, was arbitrary to say the least.

It is unnecessary to consider the further points urged by the prosecutors as invalidating the ordinance, because it must be set aside, with costs.