RUSSELL B. PHILLIPS AND G. WILLARD PHILLIPS, PARTNERS TRADING AS PHILLIPS BROTHERS, AND MICHAEL BOROS AND JOHANNE G. F. LANGE, PROSECUTORS, v. TOWNSHIP COUNCIL OF THE TOWNSHIP OF TEANECK AND TOWNSHIP OF TEANECK, RESPONDENTS.

Submitted January 18, 1938—Decided April 5, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutors, *Davies & Davies* (*Frank J. Davies,* of counsel).

For the respondents, *Donald M. Waesche.*

The opinion of the court was delivered by

PERSKIE, J. The sole question for decision is whether the action of the township council of the township of Teaneck in passing an ordinance changing certain properties, some of which belong to each prosecutor, from a business to a "Class C" residential zone was unreasonable, capricious and arbitrary. We resolve that question affirmatively.

From the stipulations entered into between the parties, and the depositions taken, we learn that prosecutors' properties were, by ordinance of November 6th, 1929, originally zoned for "Class C" residential use. About one month later, on December 17th, 1929, the original ordinance was amended and the premises in question were changed into a business zone. The ordinance was again amended on July 18th, 1933, but this amendment did not affect the properties here involved. Finally, on March 2d, 1937, the ordinance now before us was enacted, changing the properties involved back into a "Class C" residential zone. It is this change, the fourth within eight years, that prosecutors challenge.

The validity of this challenge necessarily raises the question whether the provisions of the ordinance constitute a proper exercise of power within the purview of our Zoning act (2 Rev. Stat. 40:55-30, 32; Pamph. L. 1928, ch. 274, § 5) or whether they constitute an arbitrary, unreasonable and capricious exercise of that power. To answer this question we recur to the facts.

Two parcels of land are affected. That parcel owned by the Phillips Brothers, one of the prosecutors, is a lot one hundred and fifty feet by two hundred and ninety feet fronting on Cedar Lane in Teaneck and running back to Beverly road. These prosecutors have owned this property since 1934. There is a garage and filling station on that portion of the lot fronting on Cedar Lane, and the remainder of the tract is vacant. That portion which fronts on Beverly road to a depth of one hundred feet is, so far as these prosecutors are concerned, the subject of this litigation.

The other parcel affected is owned by the prosecutors Boros and Lange, and has been owned by them since prior to the

adoption of any zoning ordinance. This parcel consists of five vacant lots immediately adjacent to the property belonging to the other prosecutors on Beverly road. These five lots front on Beverly road and extend to Windsor road, and are two hundred and forty-two feet by one hundred feet in size.

Beverly road runs east and west and is contiguous at its easterly end to a railroad through which numerous passenger and freight trains pass daily. Immediately across the street from prosecutors' properties, there is the railroad station, and a parking lot. Both parcels involved are but one block from the main business street of the town—Cedar Lane—which is lined with business establishments and zoned for business purposes. Not by way of limitation, but rather by way of example, in the close vicinity to prosecutor's properties, there is a real estate and insurance office, a barber shop, a cleaning and dyeing establishment, a beauty shop, a shoe repairing store, a store for paints and electrical appliances, two delicatessen stores, a hardware store, a retail liquor store, a drug store, a community market, a store for auto accessories and supplies, a bakery, several professional offices, a motion picture theatre, a lingerie shop, a haberdashery store, a department store, and many other kindred places of business. It is undisputed, moreover, that because of its proximity to the railroad station, the area is noisy and smoky. In addition, from Cedar Lane to Beverly road there is a drop of eighteen and one-half feet, so that if residences were erected on Beverly road, they would be on a ground level eighteen and one-half feet lower than the business establishments to which they would be contiguous. One real estate expert who testified categorically stated that the property in question was unfit for any residential use, and defendants' expert admitted that the property was unsuited for family home use.

It also appears that comparable property on the other side of the railroad tracks is zoned for business use, and there is testimony that, by reason of the change from a business to a residential zone, prosecutors' properties have declined in value to the extent of fifty per cent.

In our opinion, these facts demonstrate that the ordinance

in question bears no reasonable relation to the proper exercise of power conferred under the Zoning act, *supra*. On the contrary, such facts evince beyond question an arbitrary, unreasonable and capricious exercise of that power. *Gabrielson* v. *Glen Ridge*, 13 *N. J. Mis. R.* 142; 176 *Atl. Rep.* 676, and cases therein cited. *Cf. Resciniti* v. *Board Commissioners of Belleville*, 117 *N. J. L.* 1; 186 *Atl. Rep.* 439; *Watchung Lake, Inc.*, v. *Mobus*, 119 *N. J. L.* 272; 196 *Atl. Rep.* 223. Nor are we persuaded by the fact that the ordinance in question was enacted pursuant to a petition signed by almost one hundred per cent. of the neighbors in the vicinity. True, under our democratic form of government, the right to govern springs from the consent of those governed. Ordinarily, therefore, legislation pursuant to the unanimous consent of those governed carries with it impelling conviction. But when, as here, not one of the alleged one hundred per cent. of the property owners in the neighborhood who signed the petition is adversely affected by the challenged ordinance, the "consent of those governed" loses much, if not all, of its virtue.

Accordingly, the ordinance in question is set aside, with costs.