JOHN R. BRANDON, MARY GORDON DeFOREST AND HELEN W. SOMERS, PROSECUTORS, v. THE BOARD OF COMMISSIONERS OF THE TOWN OF MONTCLAIR, THE BOARD OF ADJUSTMENT OF THE TOWN OF MONTCLAIR, JOHN PICKEN, BUILDING INSPECTOR OF THE TOWN OF MONTCLAIR, HENRY R. KENT AND MAUDE D. KENT, DEFENDANTS.

Argued October 4, 1939—Decided February 15, 1940.

136

Before Justices Trenchard, Case and Heher.

For the prosecutors, *Pitney, Hardin & Skinner* (*Corwin Howell* and *Worrall F. Mountain, Jr.*, of counsel).

For the defendants The Board of Commissioners of the Town of Montclair, the Board of Adjustment of the Town of Montclair, and John Picken, building inspector, *George S. Harris.*

For the defendants Henry R. Kent and Maude D. Kent, *Samuel Rosenblatt.*

The opinion of the court was delivered by

Heher, J. Prosecutors challenge a resolution adopted by the defendant Board of Adjustment on January 5th, 1939, after hearing on notice, recommending to the governing body of the defendant municipality that a building permit be issued to the defendants Kent "for a group of garden-type apartments on premises known as No. 160 Gordonhurst Ave-

nue," in the municipality, conditioned as therein specified, and a resolution of the governing body passed on February 23d ensuing, also after hearing on notice, approving the recommendation thus made, and directing the issuance of a permit, as so conditioned, and subject to the further condition that the municipal building inspector "shall be clothed by the applicant with authority to interpret the conditions laid down by the Board of Adjustment and to require their specific enforcement as so interpreted."

The lands are located in zone "R-1—(One Family Zone)" outlined in the zoning ordinance, wherein such use is forbidden, and more than one hundred and fifty feet from the line of any zone in which the proposed use is permissible; and the matter came before the Board of Adjustment on the landowners' appeal from the building inspectors' denial of their application for such permit.

*First:* There is to be considered, *in limine,* defendants' contention that the writ should be dismissed for lack of timely application under the statute, and for laches. The point was not treated in the memorandum awarding the *allocatur.* We find it to be untenable.

Assuming the power of the legislature thus to curtail this court's common law jurisdiction to issue the prerogative writ of *certiorari* (*vide Traphagen* v. *Township of West Hoboken,* 39 *N. J. L.* 232; *Meredith* v. *Perth Amboy,* 63 *Id.* 520), section 40:55-46 of the Revised Statutes of 1937 has no pertinency here. It decrees that the writ of *certiorari* shall not issue "to review any decision of the board of adjustment * * * unless application therefor be made within thirty days after the filing of the decision in the office of the board." The action taken by the Board of Adjustment here was not a "decision" within the intendment of this provision; it was a mere "recommendation," inoperative unless approved by the municipal governing body. The case of *Crescent Hill, Inc.,* v. *Borough of Allendale,* 118 *Id.* 302, is not applicable. There, the board of adjustment "had declined to grant relief or to recommend to the governing body that the proposed structure be allowed in the restricted area"—a determination final in character. Certainly, *certiorari* would not ordinarily,

if ever, issue to review a mere recommendation of the board of adjustment in such a case, unacted upon by the governing body.

Nor was there laches. The initial application for a review by *certiorari* was made to a justice of this court on March 11th, 1939. It was determined, adversely to prosecutors, on March 13th. Defendants maintain that "it was not until more than seventeen days thereafter" that they "had the first intimation" of prosecutors' intention to apply for the writ to the court *en banc*. This informal notice was in fact given on April 1st. Formal notice of the application was served on April 21st.

The allegation of laches is grounded in the asserted right of the "builder" to assume, after the expiration of the thirty days' period adverted to, that a review by *certiorari* would not be available to prosecutors. It is pointed out that, after the expiration of this interval, "it [the 'builder'] took up the option for the property, secured the permit for the demolition of the buildings, proceeded to have its architect prepare detailed specifications, incurring large expense therefor, and upon completion to secure the permit for which it paid the fee of $639." But, as stated, this statutory provision was not applicable, and the defendants therefore were not warranted in proceeding on that hypothesis. Apart from this, the delay is not reasonably comprehended by the term "laches."

*Second:* It is the prime insistence of prosecutors that the action thus taken by the Board of Adjustment, approved by the municipal governing body, is invalid for lack of jurisdiction. This involves a construction of the zoning statute.

The ordinance seems to embody without pertinent change the content of *R. S.* 1937, 40:55-39, delineating the powers of the local board of adjustment; and the argument is made that the "provisions of subsection c" thereof "must be read into subsection d," and that "the making of exceptions under subsection d. * * * is an act of judicial discretion that can be exercised only upon findings of 'unnecessary hardship,' 'substantial justice' and 'harmony' with the zoning plan." These are said to be jurisdictional requirements. It is con-

tended that the contrary interpretation would render subsection d void (a) as a delegation of legislative power in contravention of article IV, section 1, *placitum* 1, of the State Constitution, and (b) as a grant to the board of adjustment of an "uncontrolled discretion" to recommend special exceptions, and to the governing body of an " 'uncontrolled discretion' to approve or disapprove the recommendation," in violation of the Fourteenth Amendment of the Federal Constitution—citing *Yick Wo* v. *Hopkins,* 118 *U. S.* 356; 6 *S. Ct.* 1064; 30 *L. Ed.* 220. Defendants, on the other hand, asseverate that there is legislative significance in the omission from subsection d of the jurisdictional prerequisite laid down in subsection c, and that the considerations set forth in section 40:55-32 alone govern the exercise of the authority reserved by subsection d.

The statute, viewed as a whole, does not bear the latter interpretation. We discern a legislative purpose to condition the exercise of the power thus saved in subsection d by the particular standard prescribed by subsection c. It is of the essence of the statutory scheme that the board of adjustment shall have exclusive authority, upon appeal in a "specific case," to grant "such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship," to the end that "the spirit of the ordinance shall be observed and substantial justice done," and the restricted lands abut a district in which the proposed structure or use is permissible under the ordinance (such structure or use not to extend, however, more than one hundred and fifty feet beyond the boundary of the latter district), and, where the lands "do not abut a district in which such structure or use" is allowable, "or where" they are "more than one hundred fifty feet beyond the boundary line" of such district, to "recommend" a variance to the municipal governing body, likewise only upon appeal in a "specific case."

The power in each instance is to grant variations from the terms of the ordinance consonant with its spirit, and not generally to alter the boundaries of the districts delimited by

the ordinance. Section 40:55-36, defining the authority of the board of adjustment, provides that the local governing body, in the establishment of the board, "shall provide" that it "may in appropriate cases and subject to appropriate conditions and safeguards make *special exceptions to the terms of the ordinance in harmony with its general purpose and intent* and in accordance with general or specific rules therein contained," while the authority to change the boundaries of the districts and the regulations otherwise laid down is, by section 40:55-35, reserved to the governing body; it is exercisable by ordinance only, subject to certain conditions therein specified. The delegated authority of the governing body to divide the municipality into districts is not, of course, absolute. The division must be such as is "best suited to carry out the purposes" of the statute, and the "regulations shall be uniform for each class or kind of buildings or other structures throughout each district, but the regulations in one district may differ from those in other districts." Section 40:55-31. The regulations "shall be in accordance with a comprehensive plan and designed" to subserve the enumerated purposes, used distributively and not conjunctively. Section 40:55-32.

The authority vested in the board of adjustment by section 40:55-39 is radically different from that conferred by section 40:55-35. The board of adjustment is not a legislative body; its functions are *quasi*-judicial, and, in the making of a variance, its power is confined by the prescribed standard or rule of conduct. The alteration of the districts demarcated by the ordinance, as distinguished from a mere variance to promote the statutory policy, is a legislative function beyond the domain of the board of adjustment. Subsection d plainly was not designed to provide for the exercise by the municipal governing body of the primary statutory zoning power upon the recommendation of the board of adjustment. It is fundamental in the statute that the jurisdiction to make "exceptions" is to be exercised only where, due to special conditions, a literal enforcement of the ordinance would result in "unnecessary hardship."

Use restrictions upon real property must find their justification in some aspect of the police power, exerted for the public welfare. Unless the particular regulation bears a substantial relation to the public health, safety, morals, comfort, convenience, or the general good and welfare in the proper sense—in this instance, to one or more of the considerations outlined in section 40:55-32 of the Revision, *supra*—it is an invasion of the constitutional right of private property. *Euclid* v. *Ambler Realty Co.*, 272 *U. S.* 365; 47 *S. Ct.* 114; 71 *L. Ed.* 303; *Nectow* v. *Cambridge*, 277 *U. S.* 183; 48 *S. Ct.* 447; 72 *L. Ed.* 842; *Mansfield & Swett, Inc.*, v. *West Orange*, 120 *N. J. L.* 145. The inquiry is whether the restraint thus put upon property "passes the bounds of reason and assumes the character of a merely arbitrary fiat." *Purity Extract and Tonic Co.* v. *Lynch*, 226 *U. S.* 192, 204; 33 *S. Ct.* 44; 57 *L. Ed.* 184. The legislature may not, under the guise of this sovereign police power secured by article IV, section VI, *placitum* 5, of the State Constitution, impose restrictions that "are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities." *Washington, ex rel. Seattle Trust Co.* v. *Roberge*, 278 *U. S.* 116; 49 *S. Ct.* 50; 73 *L. Ed.* 210; *Nectow* v. *Cambridge, supra.* Compare *N. J. Good Humor, Inc.*, v. *Board of Commissioners of Bradley Beach*, 124 *N. J. L.* 162.

Due to the necessity of generality in the subdivision of the municipality into districts under the zoning power, especial hardship ofttimes ensues unnecessarily and unreasonably to individual landowners; and the function of the board of adjustment under the statute is, through a variance, to relieve from such consequences, and thus to avert what would otherwise take the category of an unwarranted interference with the right of private property. *Dowsey* v. *Kensington*, 257 *N. Y.* 221; 177 *N. E. Rep.* 427; 86 *A. L. R.* 642. Such use restrictions are not reasonable unless fairly necessary for the attainment of one or more of the intents set forth in section 40:55-32, *supra;* and, while the general regulation may be reasonable, its application in the individual case, by reason of special conditions, may constitute an unnecessary and unjust invasion of the right of property. In

such circumstances, the board of adjustment is invested with power to vary the application of the general regulation to serve the statutory policy.

It is not within the legislative province so to exercise the power as to preclude the use of the individual property for all purposes to which it is reasonably adapted. The statutory provision for relief against "unnecessary hardship" ensuing from a "literal" application of the ordinance was designed to permit reasonable use of the particular property, and thus to guard against an unwarranted interference with the fundamental right of property, *i. e.*, to secure reasonable zoning. A "special exception" is, however, required to be "in harmony with" the "general purpose and intent" of the ordinance. The phrase "unnecessary hardship" takes special quality from the subsequent clause allowing a variance "so that the spirit of the ordinance shall be observed and substantial justice done." *R. S.* 1937, 40 :55-36, 40 :55-39. The restrictions may be so unreasonable in the given case as to be confiscatory; and, in those circumstances, the general rule must be struck down as arbitrary and oppressive. The statutory enumeration of the objectives and policy of zoning regulations (*R. S.* 1937, 40 :55-32) is of necessity to be regarded in the exercise of the power. *Fonda* v. *O'Donohue,* 109 *N. J. L.* 584; *Cook* v. *Board of Adjustment of Trenton,* 118 *Id.* 372; *Phillips Oil Co.* v. *Municipal Council of Clifton,* 120 *Id.* 13; *Dubin* v. *Wich,* 120 *Id.* 469.

A statute often speaks as plainly by inference, and by means of the purpose which underlies it, as in any other manner. That which is clearly implied is as much a part of the law as that which is expressed. Separate provisions are to be construed in the light of the general legislative scheme. *N. J. Good Humor, Inc.,* v. *Board of Commissioners of Bradley Beach, supra; P. Bronstein & Co., Inc.,* v. *Hoffman,* 117 *N. J. L.* 500; *Pine* v. *Okzewski,* 112 *Id.* 429; *May* v. *Nutley,* 111 *Id.* 166.

In *Gorieb* v. *Fox,* 274 *U. S.* 603; 47 *S. Ct.* 675; 71 *L. Ed.* 1228, a local ordinance divided the city into "business" and "residential" districts for the declared purpose of establishing building lines and regulating and restricting the construction

and location of buildings, and for other purposes. Another ordinance created a set back or building line, with relation to the street, applicable to all buildings to be erected. The city council, by a proviso, reserved to itself the authority to make exceptions and to permit the erection of buildings closer to the street. The set back ordinance was assailed as contravening the equal protection clause of the Fourteenth Amendment of the Federal Constitution, in that its provisions enabled "the council unfairly to discriminate between lot-owners by fixing unequal distances from the street for the erection of buildings of the same character under like circumstances."

Dismissing this contention, Mr. Justice Sutherland said: "We cannot, of course, construe the ordinance as meaning that the power may be thus exerted; nor may we assume in advance that it will be exercised by the council capriciously, arbitrarily, or with inequality. It will be time enough to complain when, if ever, the power shall be thus abused. The proviso evidently proceeds upon the consideration that an inflexible application of the ordinance may under some circumstances result in unnecessary hardship. In laying down a general rule, such as the one with which we are here concerned, the practical impossibility of anticipating in advance and providing in specific terms for every exceptional case which may arise, is apparent. And yet the inclusion of such cases may well result in great and needless hardship, entirely disproportionate to the good which will result from a literal enforcement of the general rule. Hence the wisdom and necessity here of reserving the authority to determine whether, in specific cases of need, exceptions may be made without subverting the general purposes of the ordinance. We think it entirely plain that the reservation of authority in the present ordinance to deal in a special manner with such exceptional cases is unassailable upon constitutional grounds. * * * *Yick Wo* v. *Hopkins,* 118 *U. S.* 356; 30 *L. Ed.* 220; 6 *Sup. Ct. Rep.* 1064, upon which petitioner relies, is not to the contrary. The ordinance there involved vested uncontrolled discretion in the board of supervisors, and this discretion was actually exercised for the express purpose of depriv-

ing the petitioner in that case of a privilege that was extended to others. See *Crowley* v. *Christensen*, 137 *U. S.* 86; 34 *L. Ed.* 620; 11 *Sup. Ct. Rep.* 13." It seems that the standard of "unnecessary hardship" was not expressly laid down in the ordinance. *Gorieb* v. *Fox*, 145 *Va.* 554; 134 *S. E. Rep.* 914.

It is a corollary of the foregoing considerations that a finding of "unnecessary hardship" to the individual owner, due to "special conditions," is a *sine qua non* to the exercise of the board of adjustment's authority to grant a variance from the terms of the ordinance. This is a *quasi*-judicial function, in its essence discretionary, guided by the policy of the statute, and of the ordinance so far as consistent therewith. *Phillips Oil Co.* v. *Clifton, supra; Dubin* v. *Wich, supra; Cook* v. *Board of Adjustment of Trenton, supra; Schnell* v. *Township of Ocean,* 120 *N. J. L.* 194. And the superintendency vested in the governing body is not essentially legislative, but likewise discretionary, controlled by the same criterion and rule of conduct. This interpretation is plainly essential to the integrity of the statutory scheme—to secure that equality and uniformity of operation within the particular zone that are basic in the statute, if not, indeed, in the constitutional exercise of the zoning power. As stated, the governing body's exercise of this delegated legislative authority, by an amendment of the general regulations of the ordinance, is otherwise provided for. *R. S.* 1937, 40:55-34, 40:55-35.

*Third:* It remains to consider whether the challenged action represents a valid exercise of the power thus bestowed. Was it based upon a finding of "unnecessary hardship" to the landowners, due to "special conditions," or was this standard ignored for another that is not to be found in the statute or the ordinance?

The statute commits the exercise of this discretionary authority to make special exceptions to the experienced judgment of the board of adjustment, supervised by the governing body; and it is not within the province of this court (*R. S.* 1937, 2:81-8 notwithstanding) to substitute its judgment for that of the local bodies, unless there has been an abuse of the delegated legal discretion. *Coriell* v. *Dunellen,*

122 *N. J. L.* 172; *affirmed,* 123 *Id.* 264; *Vogel* v. *Board of Adjustment, Township of Bridgewater,* 121 *Id.* 236; *Allen* v. *Paterson,* 98 *Id.* 661; *affirmed,* 99 *Id.* 532; *Essex Investment Co.* v. *Board of Commissioners of Newark,* 14 *N. J. Mis. R.* 181; *Harrison* v. *Board of Adjustment,* 6 *Id.* 570. An abuse of such discretion is remediable on *certiorari* as error in matter of law. In the words of Lord Mansfield, judicial discretion "means *sound* discretion, *guided by law.* It must be governed by rule, not by humour. It must not be arbitrary, vague and fanciful, but legal and regular." *Rex* v. *Wilkes,* 4 *Burr.* 2527. The valid exercise of such discretion connotes direction by "the reason and conscience of the judge to a just result," taking account of the law and the particular circumstances of the case. *Burns* v. *United States,* 287 *U. S.* 216; 53 *S. Ct.* 156; 77 *L. Ed.* 266; *Allen* v. *Paterson, supra; Hoffman* v. *Maloratsky,* 112 *N. J. Eq.* 333; *LaBell* v. *Quasdorff,* 116 *N. J. L.* 368.

And, if a conceded variance is to be sustained, it would seem to be axiomatic that the return reveal a finding by the board of adjustment of "unnecessary hardship," the jurisdictional prerequisite to the making of a variance from the general regulation, and sufficient also to show a tangible basis therefor. *Vide Fonda* v. *O'Donohue, supra; St. Mary's, &c., Church* v. *Board of Adjustment of New Brunswick,* 14 *N. J. Mis. R.* 288. Otherwise, a flouting or disregard of the statutory essentials to the granting of the variance would not be correctible on *certiorari,* unless this court made its own independent jurisdictional findings on the proofs returned; and this, as stated, is not the court's function. Nor could we, as will be presently shown, exercise such authority on the return here made. In the words of Cardozo, C. J., dealing with a like provision in the New York statute: "There has been confided to the board a delicate jurisdiction and one easily abused. Upon a showing of unnecessary hardship, general rules are suspended for the benefit of individual owners and special privileges established. Nothing is before us to justify or even suggest a doubt of the good faith and sincerity with which the power has been exercised. At the same time judicial review would be reduced to an empty form

if the requirement were relaxed that in the return of the proceedings the hardship and its occasion must be exhibited fully and at large. Safeguards of this order have at times an aspect of trivality when our scrutiny is narrowed to one instance or another. Their value is perceived when the outlook is extended to something wider than particulars. Disclosure is the antidote to partiality and favor." *People, ex rel. Fordham Manor Reformed Church* v. *Walsh,* 244 *N. Y.* 280; 155 *N. E. Rep.* 575. Such authority "is designed to be sparingly exercised. It is only in rare instances and under exceptional circumstances that relaxation of the general restrictions established by the statute ought to be permitted. The power granted is only for the relief of specific instances, peculiar in their nature." *Norcross* v. *Board of Appeals,* 255 *Mass.* 177; 150 *N. E. Rep.* 887. See, also, *Grady* v. *Katz,* 124 *Conn.* 525; 1 *Atl. Rep.* (2d) 137. Such exception is granted, not as a mere favor, but to advance the essential statutory purpose—the accommodation of fundamental common and individual rights.

Whatever its early common law limitations, in modern practice the function of the extraordinary writ of *certiorari* is "to bring the true record of an inferior judicial or *quasi*-judicial tribunal, properly extended so as to show the principles of its decision, before a superior court for examination as to material mistakes of law apparent on the face of such record." *Bradley* v. *Board of Zoning Adjustment,* 255 *Mass.* 160; 150 *N. E. Rep.* 892. And this procedural rule is implicit in our adjudications. *New Jersey Railroad and Tr. Co.* v. *Suydam,* 17 *N. J. L.* 25, 62; *Race* v. *Dehart,* 24 *Id.* 37; *Van Riper* v. *North Plainfield,* 43 *Id.* 349; *Lighthipe* v. *Orange,* 75 *Id.* 365; *Marter* v. *Repp,* 82 *Id.* 270; *Lindabury* v. *Clinton Township,* 93 *Id.* 96; *State* v. *Czarnicki,* 124 *Id.* 43. See, also, *Levy* v. *Board of Standards and Appeals,* 267 *N. Y.* 347; 196 *N. E. Rep.* 284.

The return here does not exhibit the reason for the variance. The resolutions granting the exception are silent respecting the ground upon which it was made to rest. Indeed, the proceedings before the Board of Adjustment and the governing body reveal indications that considerations

alien to the policy of the statute and the ordinance controlled in the determination of the matter, *i. e.*, that it had been demonstrated there is now no market for the lands if subdivided for use in accordance with the zoning regulations, and that there is a local need for such apartment houses.

For instance, at a meeting of the governing body to consider the recommendation of the Board of Adjustment, the mayor (who ultimately voted for the resolution) stated that he was "impressed by the need of Montclair for apartments of this type," and that he desired "to do" his "part in making such development possible." And one of his colleagues (who likewise voted in the affirmative) declared there was need for "multi-family building construction" to supply "young married people," and he "seriously" doubted that there were "ample areas already zoned for apartments." At a subsequent meeting of the governing body held on February 9th, 1939, when the matter was again under consideration, a resolution was adopted requesting the local planning board to make a study of the subject of "garden type apartments," and to make recommendations respecting "the existing R-5 Zone or the creation of a new Zone or Zones, looking toward encouraging construction" of such apartments. The reply of the Planning Board, delivered to the governing body at a meeting held on the ensuing February 23d, was that it had "for some time been studying the advisability of recommending a new zone looking toward encouraging the construction of garden type apartments of two and one-half stories in height;" that it was believed "desirable that further time be given to the study and discussion of the regulations and the possible field for this type of zone in the Town of Montclair before recommendations are made as to the establishment of such new zone, or as to including in such zone any specific area;" and that "To this end the Planning Board is actively continuing its studies, and will report further to the Board of Commissioners at the earliest possible date." Notwithstanding these representations, the resolution approving the variation granted by the Board of Adjustment was adopted immediately. The mayor explained that his "statement at the last meeting of the commission" gave his "rea-

son for favoring this type of development for Montclair;" that he was "impressed by the fact that after prolonged study the Board of Adjustment approved this particular proposal by a unanimous vote;" and that he believed "approval is for the best interests of Montclair, as carefully as" he could "weigh the matter." And it is not without significance in this regard that the respondent boards now interpose the argument, in defense of the resolutions, that the standard of "unnecessary hardship" set down in subsection c of *R. S.* 1937, 40:55-39, is not applicable in the exercise of the power reserved in subsection d, although it is also maintained, in the alternative, that there was proof of such hardship.

Thus it is fairly inferable from the return in this behalf that these municipal bodies, in so proceeding, overlooked the essential distinction between local legislative zoning power and the authority to make individual variations from regulations generally reasonable in order to subserve the spirit of the statute and the ordinance, or, having made the distinction, disregarded it. The one is a legislative act, valid if not in contravention of constitutional limitations; the other is a *quasi*-judicial function grounded in discretion, reviewable on *certiorari*.

The law indulges the presumption that a zoning ordinance is altogether reasonable in its application; and there rests upon the individual landowner the onus of establishing circumstances justifying a variance from the general rule of the ordinance. *Fonda* v. *O'Donohue, supra; Cook* v. *Board of Adjustment of Trenton, supra.* The term "unnecessary hardship" does not lend itself to precise definition automatically resolving every case. The test would seem to be whether the use restriction, viewing the property in the setting of its environment, is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property. Is the environment such that the lot is not reasonably adapted to a conforming use? It is not *per se* a sufficient reason for a variation that the non-conforming use is more profitable to the landowner. *People, ex rel. Fordham Manor Reformed Church* v. *Walsh, supra; Grady* v. *Katz, supra; Levy* v. *Board of Standards and Appeals, supra.* The

converse of this would emasculate the principle of zoning, for invidious distinctions are inadmissible. It is to be observed that the statute permits the exercise of the zoning power for the *conservation,* not the *enhancement,* of the "value of property." *R. S.* 1937, 40:55-32. Of course, where, due to the environment, the land is not adapted to a profitable conforming use, a different situation is presented.

In fine, the office of the Board of Adjustment, as its title signifies, is adjustment to permit of a reasonable use of the individual plot where the general rule, because of the special circumstances, does not admit of such use—not alteration of the boundaries. If the difficulty is common to lands in the vicinity, by reason of arbitrary zoning, and is therefore of general rather than particular application, the remedy lies with the local legislative body or in the judicial process. And so the cause must be remitted for re-examination and determination in accordance with the correct principles. Compare *Jersey City* v. *State Water Policy Commission,* 118 *N. J. L.* 72; *Mansfield & Swett, Inc.,* v. *West Orange, supra.*

*Fourth:* Since there is to be a rehearing, we consider it politic to observe that there is nothing of substance in the contention that the resolution of the governing body, by the additional condition imposed (as set forth *supra*), also unlawfully "delegates power to the building inspector to interpret conditions of the resolution and of the permit."

We deem this to be an administrative function purely. There was thereby no delegation of authority exclusively vested by statute in the board of adjustment or the governing body. In the performance of this duty, the building inspector would act only in a ministerial capacity to enforce the conditions of the grant as written. Compare *State, Danforth, Pros.,* v. *City of Paterson,* 34 *N. J. L.* 163. He could not in his discretion materially vary or modify them.

The resolutions are accordingly vacated, with costs; and the cause is remanded for further proceedings in conformity with this opinion.