11 N.J. Super. 405 (1951)
78 A.2d 435
THEODORE GUACLIDES AND MARY B. GUACLIDES, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF ENGLEWOOD CLIFFS, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1951.
Decided January 24, 1951.
*409 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Irving I. Rubin argued the cause for appellants.
Mr. Domenick F. Pachella argued the cause for respondent (Mr. Thomas S. Clancy, attorney).
The opinion of the court was delivered by WM. J. BRENNAN, JR., J.A.D.
Plaintiffs appeal from an adverse judgment entered after trial in the Law Division, Bergen County, in a proceeding in lieu of prerogative writ whereby they challenged as unreasonable, arbitrary and capricious a 1949 amending ordinance to the 1932 zoning ordinance of the Borough of Englewood Cliffs. The amending ordinance changed all multi-family dwelling districts within the borough to single-family dwelling zones, except a district, or a part of a district, at the extreme north end of the municipality. Plaintiffs own a 17-acre tract in one and a two-acre tract in another of the affected districts.
The borough is a small residential community on the Palisades, bounded on the west by the City of Englewood, and by the Boroughs of Fort Lee on the south and Tenafly on the north. It overlooks Palisades Interstate and Allison Parks, which lie to the east along the Hudson River. Route 9-W, a principal highway for traffic to and from George Washington Bridge, which is distant about a mile and a half south, traverses the length of the borough and, within borough limits, is known as Sylvan Avenue. The community is on a plateau sloping east from Sylvan Avenue toward the river to Hudson Terrace, about 30 feet below, and sloping west from Sylvan Avenue to the boundary line at the City of Englewood.
The terrain throughout the borough is typical of the Palisades area with pronounced outcroppings of rock on the plateau, especially in the undeveloped wooded areas east of *410 Sylvan Avenue to Hudson Terrace where plaintiffs' 17-acre tract is located; the terrain to the west of Sylvan Avenue has also essentially a rocky base, although overlaid to a greater extent with earth and shale.
The borough has not had the experience of a large increase of population and the building of many new homes which has been common to many Bergen County communities since the opening of the George Washington Bridge in 1932, and which has been particularly pronounced since the end of World War II. Its 1932 population of about 900 has remained virtually constant and until the past year, when five new homes were built, not more than one or two houses were constructed there in any year since 1932. Builders and promoters of single-family dwelling projects, sites for which are now in short supply in the county, have inquired into the borough's possibilities for the purpose, but, as stated by one of plaintiffs' expert witnesses, "They didn't touch Englewood Cliffs. Why? On account of the rock." This rock condition requires an expenditure of from $3,000 to $4,000 for improvements on a lot 70 feet by 100 feet, particularly along the plateau, as compared with the cost of $600 to $700, and maximum of $1,000, required generally for that size lot in most communities of the county.
The borough, nevertheless, has always been, and is, primarily a community of single-family homes. No apartment house or other like multi-family structure has ever been built in the borough, although under the 1932 zoning ordinance such structures were permissible along the entire plateau facing the river front, and also in the southerly and middle segments of the municipality west of Sylvan Avenue, back to the City of Englewood line, and in the north end of the borough, about half way to the Englewood city line.
Plaintiffs purchased their 17-acre tract in 1945. It is located in the southerly end of the borough, east of Route 9-W or Sylvan Avenue and between that thoroughfare and Hudson Terrace. In 1949 they purchased, and now make their home on, the two-acre tract which has a large residence and outbuildings and is located on Floyd Street on the west slope.
*411 On March 15, 1949, plaintiffs made an agreement with Lane Construction Company for the sale of about 13 acres of the 17-acre tract. That company thereupon sought the Borough council's approval of a plot plan suitable to the erection thereon of a garden-type apartment project. Residents of the borough protested by petition to the borough council. On June 23, 1949, the challenged ordinance was introduced and became effective July 14, 1949.
The amending ordinance is applicable to every area throughout the borough where multi-family structures had been permitted under the 1932 ordinance and now permits therein only single-family structures on lots 70 feet by 100 feet, except, as mentioned, in the extreme northerly end of the borough, where, however, there are presently no sewerage facilities.
The obvious purpose and effect of the amending ordinance is to preserve the character of the borough as predominantly a community of single-family homes. We concur with the trial court's finding that in the circumstances shown by this record plaintiffs have not sustained their allegation that the ordinance is arbitrary, unreasonable and capricious in its effect.
There is a presumption that the regulation is reasonable, and the burden is upon plaintiffs to establish the contrary. Brandon v. Montclair, 124 N.J.L. 135 (Sup. Ct. 1940); affirmed, 125 N.J.L. 367 (E. & A. 1940); Lumund v. Board of Adjustment of the Borough of Rutherford, 4 N.J. 577 (1950); Eastern Boulevard Corp. v. Willaredt, 125 N.J.L. 173 (Sup. Ct. 1940); affirmed, 125 N.J.L. 511 (E. & A. 1941). The rule is that even "if the validity of the action be fairly debatable, the legislative judgment prevails." Appley v. Bernards Township, 128 N.J.L. 195 (Sup. Ct. 1942).
Plaintiffs argue that the ordinance does not conform to the statutory requisites laid down in R.S. 40:55-32. We are unable to agree. The ordinance evinces, as required by that statute, (1) a comprehensive plan, (2) designed for one of the purposes enumerated in the section (in this instance, to *412 "promote * * * the general welfare"), and (3) "made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
The plan is clearly comprehensive, embracing, as it does, changes in 13 specified areas, and not just in the two where plaintiffs' tracts are located, and restricting virtually the entire community to structures of the specified single-family type, except where incidental and necessary commercial and business structures are allowed along defined areas bordering on named streets, and a small industrial zone, and except, too, the area in the north end reserved for multi-family structures. We find nothing in the ordinance to support plaintiffs' argument that the plan manifests an attempt at "spot" zoning aimed only at plaintiffs' tracts and intended as a discriminatory and arbitrary classification of their properties, as was held as to ordinances in the factual settings presented in Ridgefield Terrace Realty Co. v. Ridgefield, 136 N.J.L. 311 (Sup. Ct. 1947); The DeMott Homes, &c., Inc., v. Margate City, 136 N.J.L. 330 (Sup. Ct. 1947); affirmed, 136 N.J.L. 639 (E. & A. 1948); Cassinari v. City of Union City, 1 N.J. Super. 219 (App. Div. 1949); Vine v. Zabriskie, 122 N.J.L. 4 (Sup. Ct. 1939); Kerrigan Development Co. v. City of Newark, 2 N.J. Super. 590 (Law Div. 1949); Phillips v. Township Council, &c., Teaneck, 120 N.J.L. 45 (Sup. Ct. 1938); Ingannamort v. Borough of Fair Lawn, 133 N.J.L. 194 (Sup. Ct. 1945); and Dorsey Motors, Inc., v. Davis, 13 N.J. Misc. 620 (Sup. Ct. 1935). These cases are plainly distinguishable. In each the regulation in the situation shown had the purpose and effect of imposing a discriminatory restriction not applicable to lands similarly situated and usually in the immediate neighborhood. The ordinance in the instant case applies to all lands throughout the borough previously zoned for multi-family dwellings, except those in the reserved north area, and becomes and is effective at a time when no apartment house exists anywhere *413 in the community and when plaintiffs' 17-acre tract in common with like tracts in the immediate vicinity are undeveloped, or where built upon, are sites of single-family houses.
The design of the ordinance to promote the general welfare of the borough is evident. "Use zoning for single family dwellings serves the general prosperity and welfare." Collins v. Board of Adjustment of Margate City, 3 N.J. 200, at 208 (1949), and cases cited therein. Although it is true that the general welfare clause of the statute cannot be invoked to prohibit a use solely because such use is "repugnant to the sentiments or desires of a particular class residing in the immediate neighborhood," Frank J. Durkin Lumber Co. v. Fitzsimmons, 106 N.J.L. 183 (E. & A. 1929), nonetheless, when, as here, the design is "to promote the common good of the whole of the people of such community," Ignaciunas v. Nutley, 99 N.J.L. 389 (E. & A. 1924), the statutory requisite in this particular is fully met.
A community has broad powers reasonably to achieve the purposes to be served by zoning "to provide a balanced and well-ordered scheme for all activity deemed essential to the particular municipality." Berdan v. City of Paterson, 1 N.J. 199 (1948). It has been held that a municipality predominantly residential in character has the power wholly to exclude from its borders industrial enterprises or activities, or to impose limitations on the extent thereof, for the purpose of preserving its residential character, and is not required merely to restrict such enterprises or activities to particular zones or areas, at least when, although separated therefrom but in the same geographical region, there is present a concentration of industry in an area peculiarly adapted to industrial development and sufficiently large to accommodate such development for years to come. Duffcon Concrete Products, Inc., v. Borough of Cresskill, 1 N.J. 509 (1949). And, equally here, the familiar restraints limiting the exercise of the police power will not be deemed to be flouted by the legislation of this borough enacted to preserve the long-standing character of the affected areas as predominantly districts of single-family homes and excluding multi-family structures *414 therefrom, particularly as there is not and never has been any apartment type building in such areas and the ordinance permits their construction elsewhere in the borough.
Plaintiffs argue, however, that the restriction upon use is confiscatory as applied to their 17-acre tract, contending that the evidence showed the use of that tract for single-family homes is not economically feasible but is possible only at prohibitive cost. The evidence does not have so broad a reach. Plaintiffs' proofs showed only that the high cost of installing improvements for single-family houses makes the site unattractive to builders and promoters of housing projects for profit. There is no showing that individuals desiring to build homes for their own occupancy and willing and able to pay the premium cost would or will not do so. Hundreds of homes have been built in the borough and the inference is clear that their owners did not consider the higher improvement cost an insurmountable obstacle. The restriction enacted by the ordinance may well have the effect of attracting to the borough more persons desiring to build their own homes in a municipality where the intent to preserve its character as a community of single-family houses has been so definitely evidenced. A zoning ordinance does not contravene constitutional limitations merely because the restricted use may not be the most profitable use to which the property can be devoted. Cf. Brandon v. Montclair, supra; Berdan v. City of Paterson, supra; Protomastro v. Board, etc., of Hoboken, 3 N.J. 494 (1950). The restriction imposed by this ordinance is reasonably adapted to the needs of this borough and its effect in the circumstances is not a taking of property in the constitutional sense. "All property is held in subordination to the police power; and the correlative restrictions upon individual rights  either of person or of property  are incidents of the social order, deemed a negligible loss compared with the resultant advantages to the community as a whole, if not, indeed, fully recompensed by the common benefits." Collins v. Board of Adjustment of Margate City, 3 N.J. at 206 (1949).
*415 The statutory test is not, as plaintiffs apparently believe, whether the design of the ordinance encourages the most appropriate use of plaintiffs' lands, but whether it encourages "the most appropriate use of land throughout the municipality," considering the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of property for such uses. Duffcon Concrete Products, Inc., v. Borough of Cresskill, supra. The legislative judgment implicit in this ordinance is that the most appropriate use of substantially all of the lands throughout the borough, including plaintiffs' tracts, is for single-family dwellings and that their value should be conserved for such use. Nothing in the circumstances shown by the record justifies judicial interference with this judgment of the borough council.
Plaintiffs argue finally that the ordinance must be struck down because the proofs show it was hurriedly adopted for specific purpose of preventing their vendee from carrying out its known plan to construct the apartment building. Doubtless the filing of vendee's plot plan brought the issue to a head. It is evident, however, that the ordinance is in every respect valid, and, in such case, the law prevailing at the time of the filing of the plot plan is an immaterial consideration. Concord Garden Apartments v. Board of Adjustment of the City of Englewood, 1 N.J. Super. 301 (App. Div. 1949). Manifestly the ordinance would not be invalid merely because of the circumstance that the vendee's action gave incentive to its passage. The DeMott Homes, &c., Inc., v. Margate City, supra, and Ridgefield Terrace Realty Co. v. Ridgefield, supra, relied on by plaintiffs do not support plaintiffs' proposition. The effect of the ordinance in each of those cases was such as to require in any event a finding in the particular factual circumstances presented that the municipal action was arbitrary and capricious. Plainly the mention of the proof of precipitate municipal action is to be read in the entire context of each opinion, not as intended to lay down a rule that by itself such proof established the invalidity of the pertinent ordinance, but merely that such *416 proof tended to confirm the finding that the ordinance in the situation shown evidenced arbitrary and capricious regulation designed to forestall the legitimate plans of the property owner for the use of the affected property.
Affirmed.