13 N.J. Super. 490 (1951)
80 A.2d 650
LIONSHEAD LAKE, INCORPORATED, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION OF THE COUNTY OF PASSAIC AND STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 27, 1951.
*492 Mr. Reuben P. Goldstein, attorney for plaintiff (Mr. Archibald Kreiger, of counsel).
Messrs. Markley & Broadhurst, attorneys for defendant.
Messrs. Stickel & Stickel, by Mr. Fred G. Stickel, III, as amicus curiae on behalf of the defendant.
DAVIDSON, J.S.C.
This proceeding in lieu of prerogative writ seeks to set aside the provisions of the zoning ordinance of the Township of Wayne with respect to the minimum size *493 requirements of dwellings, plaintiff charging that the ordinance is unreasonable and constitutes an invalid exercise of the police power of the municipality.
The matter came before this court some time ago on motion for summary judgment and its then determination is reported in 8 N.J. Super. 468, the Appellate Division, however, holding in 9 N.J. Super. 83 that summary judgment was precluded, as a factual issue had been properly presented.
After a painstaking inquiry into the facts, it is difficult to perceive any genuine or material dispute. On July 12, 1949, defendant adopted a revised zoning ordinance covering the entire township, which was to be divided into four districts, namely, Residence District "A", Residence District "B", Business District and Industrial District. The ordinance, under section 3, sub-division (d), "Minimum Size of Dwellings," provided that:
"Every dwelling hereafter erected or placed in a Residence `A' District shall have a living-floor space, as herein defined, of not less than 768 square feet for a one story dwelling; of not less than 1,000 square feet for a two story dwelling having an attached garage; of not less than 1,200 square feet for a two story dwelling not having an attached garage. For the purpose of this section the second floor shall have a ceiling height of not less than 7 feet, measured at the eaves from the floor to the underside of the rafters."
As the same requirement for minimum size of dwellings is set forth for Residence "B" Districts under section 4, paragraph (d), and by specific reference is incorporated in Business Districts under section 5, paragraph (e), and Industrial Districts under section c, paragraph (b)-1, the result is that a uniform minimum size of dwellings, in accordance with the standards particularly described for Residence "A" Districts, as above set forth, prevails throughout the entire municipality.
N.J.S.A. 40:55-30 provides that:
"Any municipality may by ordinance, limit and restrict to specified districts and may regulate therein, buildings and structures according to their construction, and the nature and extent of their use, and the exercise of such authority, subject to the provisions of *494 this article, shall be deemed to be within the police power of the state. * * *
The authority conferred by this article shall include the right to regulate and restrict the height, number of stories, and sizes of buildings, and other structures, the percentage of lot that may be occupied, the sizes of yards, courts, and other open spaces, the density of population, and the location and use and extent of use of buildings and structures for trade, industry, residence, or other purposes."
N.J.S.A. 40:55-32 clearly provides the basis for a proper determination of the present controversy, and it reads as follows:
"Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
Through the years there has been a gradual broadening in the legal concept of valid zoning restrictions, and, as was held in Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509, at page 513 (1949):
"What may be the most appropriate use of any particular property depends not only on all the conditions, physical, economic and social, prevailing within the municipality and its needs, present and reasonably prospective, but also on the nature of the entire region in which the municipality is located and the use to which the land in that region has been or may be put most advantageously."
This goes beyond a finding based strictly on the police power, other than general welfare, and establishes a test grounded in the community use of the land in the municipality, with due consideration to all general conditions and needs, present and reasonably to be anticipated in the region. It is, accordingly, necessary to obtain a broad perspective of the municipality and the region in which it is located.
*495 The Township of Wayne is in the County of Passaic, lies generally about three miles northwest of the City of Paterson, and embraces an area of 25.34 square miles, with a population of 11,000. The municipality includes several sizeable lakes within its borders, the one on plaintiff's property comprising 145 acres, and there are a large number of summer or vacation homes and a number of dwellings occupied only during the summer months. Originally a farming section, there are now real estate developments and subdivisions, some business and light industry, little heavy industry, and generally it may be considered a rather widely scattered and sparsely settled residential community, the evidence establishing that the built-up portions constitute about 12% of the area of the township.
Plaintiff, attacking the zoning ordinance as unreasonable, is met by a presumption that the ordinance is reasonable and for the public good, and he must bear the burden of establishing the contrary. Brandon v. Montclair, 124 N.J.L. 135 (Sup. Ct. 1940); affirmed 125 N.J.L. 367 (E. & A. 1940); Lumund v. Bd. of Adjustment of the Borough of Rutherford, 4 N.J. 577 (1950).
The minimum size requirement throughout the defendant municipality for a one-story dwelling under the ordinance now questioned is 768 sq. ft., indicating a normal 24 x 32 foot building, and the cost of erection is from $11,000 to $12,000 mass produced, and 20% more for individual construction, and the testimony, confirming general acceptance, is that but 30% of the population can afford homes costing over $10,000, the remaining 70% being necessarily restricted to the purchase of homes costing less than that figure.
The ordinance, in its present form, therefore, practically provides that no house costing less than a certain sum may be erected in the entire community, let alone a specified area, and this it cannot legally do. Brookdale Homes, Inc. v. Johnson, 123 N.J.L. 602 (Sup. Ct. 1940); affirmed 126 N.J.L. 516 (E. & A. 1940). No person under the zoning power can legally be deprived of his right to build a house on *496 his land merely because the cost of that house is less than the cost of his neighbor's house. Ibid.
Dwellings are erected on about a dozen widely separated areas, ranging all the way from a sparsely settled community along the river, known as Riverview, to highly developed, costly and exclusive communities, such as Ridgewood Acres, Preakness Park Manor and Pines Lake, where the homes cost from $30,000 to $75,000.
In the several residential communities the dwellings which meet or exceed the specified square footage minimum requirement range from 50% to 100%. As a practical matter, it is pertinent to note that the building inspector, produced as a witness for defendant, testified that from the time he assumed office on January 1, 1946, to the adoption of the ordinance on July 12, 1949, he issued 1305 building permits, and but 67 were for dwellings of less than 768 sq. ft.
In the entire defendant township about 70% of the dwellings meet or exceed the minimum square footage requirement of the ordinance under attack, and the remaining 30% are below. While plaintiff produced no recognized public health expert, the testimony indicated no direct connection between health and square footage, except as to provision for adequate sanitary and sewerage services, which, of course, are regulated and controlled by other municipal ordinances.
The New Jersey Code of Minimum Construction Requirements for One-and Two-Family Dwellings provides that:
"Living rooms shall have an area not less than 150 square feet, or not less than 160 square feet when dining space is included and not less than 220 square feet when dining and cooking space is included, provided that this area shall be not less than 210 square feet when located in a dwelling unit having less than two bedrooms.
The area of kitchens shall be not less than 60 square feet, or not less than 90 square feet when dining space is included, provided that the area of the kitchen shall be not less than 50 square feet when located in a dwelling unit having less than two bedrooms.
The area of at least one bedroom in each dwelling unit shall be not less than 100 square feet.
The area of any other bedroom in the same unit shall be not less than 70 square feet."
*497 These figures are indicative of accepted minimums for adequate housing with less square footage than the ordinance requires.
It is settled that an ordinance under the Zoning Act must bear a reasonable relation to the powers conferred by that act. Phillips v. Township Council, &c., Teaneck, 120 N.J.L. 45, 48, 198 A. 368 (Sup. Ct. 1938); affirmed 122 N.J.L. 485, 5 A.2d 698 (E. & A. 1939). Restrictions imposed pursuant to the Zoning Act must tend at least in some degree to promote the public good; they must bear a "substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." Nectow v. Cambridge, 277 U.S. 183; 72 L.Ed. 842 (1928); Gabrielson v. Glen Ridge, 13 N.J. Mis. R. 142, 176 A. 676 (Sup. Ct. 1935); Phillips v. Township Council, &c., Teaneck, supra; Phillips Oil Co. v. Municipal Council, &c., Clifton, 120 N.J.L. 13, 197 A. 730 (Sup. Ct. 1938); 179 Duncan Avenue Corp. v. Jersey City, 122 N.J.L. 292, 5 A.2d 68 (Sup. Ct. 1939); Spur Distributing Co., Inc. v. Bridgeton, 122 N.J.L. 460, 6 A.2d 192 (Sup. Ct. 1939). (Cf. Resciniti v. Board of Commissioners, Belleville, 117 N.J.L. 1, 186 A. 439 (Sup. Ct. 1936); Watchung Lake, Inc. v. Mobus, 119 N.J.L. 272, 196 A. 233 (Sup. Ct. 1938)).
Thus while our Legislature has unquestionably given municipalities the right to pass ordinances "to regulate and restrict the height, number of stories, and sizes of buildings," such ordinances to be valid must be designed to promote public health, safety, and general welfare. R.S. 40:55-30. The mere power to enact an ordinance such as the one here involved does not carry with it the right arbitrarily or capriciously to deprive a person of the legitimate use of his property. Brookdale Homes, Inc. v. Johnson, supra.
Defendant municipality charges that plaintiff's action is premature in that it has not appealed to the board of adjustment and exhausted its remedy, but this is a proper attack upon the validity of the zoning ordinance and the *498 defense is without merit. Lionshead Lake, Inc. v. Wayne, 9 N.J. Super. 83 (App. Div. 1950).
We are not here concerned with plaintiff's individual plight as it relates to the effect of the zoning requirements upon the operation of its real estate development, for it is beyond dispute that regardless of personal interest or potential financial loss, every landowner is subject to the control of his property for the public good. "The touchstone of the reasonableness of the control is to be found in the relation of the regulation to the health, safety, morals, or the general welfare of the community." Collins v. Board of Adjustment of Margate City, 3 N.J. 200, at p. 206 (1949). Reasonableness is a fact question. American Grocery Co. v. New Brunswick, 124 N.J.L. 293 (Sup. Ct. 1940); affirmed 126 N.J.L. 367 (E. & A. 1941).
Defendant, recognizing the legal situation, contends that the reasonableness of the control now questioned, specifically the minimum square foot dwelling requirement throughout the entire municipality, is based on the relation of the regulation to the health or the general welfare of the community, and with this contention, after resolving the factual question, I cannot agree.
While defendant produced an outstanding and nationally known public health expert, his testimony, in my judgment, materially substantiated plaintiff's position, for he based his observations, not upon physical health in the ordinary and generally accepted sense of the words, but upon what he termed "emotional health," a sense of inferiority due to living in a sub-standard home. He fixed a minimum requirement essential to healthful living of 400 sq. ft. for one person, 750 sq. ft. for two persons, 1,000 sq. ft. for three persons, 1,150 sq. ft. for four persons, 1,400 sq. ft. for five persons, and 1,550 sq. ft. for six persons, stating that these were not suggested as legal standards, but goals at which to aim. He freely acknowledged that physiological and emotional needs were the essentials considered, that 750 sq. ft. (slightly below the ordinance requirement) was adequate *499 for two persons, and that the federal space requirements were about 20% less than his figures. As the average family is comprised of 3.6 persons, defendant rather uniquely theorizes that all dwellings should be constructed for such occupancy. This would seem to require no comment.
Plaintiff's operations are concerned with three-room cottages in which the living room contains 160 sq. ft., the bedroom 100 sq. ft. and the kitchen 85 sq. ft., the body of the house totalling 484 sq. ft., exclusive of the porch; four-room cottages comprising a living room 14 x 17 feet, one bedroom 12 x 17 feet, a second bedroom 12 x 12 feet and kitchen 12 x 12 feet, making a living space area of 676 sq. ft., exclusive of the porch; and smaller four-room cottages just under 600 sq. ft., each home containing modern bath and adequate sanitary facilities, all individually styled, extremely attractive in general appearance, and wholly in keeping with their rustic surroundings; they present no health problem and are in no sense detrimental to the community.
While the evidence establishes that homes for five or six persons, presumably requiring dwellings in excess of 1,400 sq. ft., would necessitate a plot size increase, the ordinance makes no such provision and permits the larger structure on the same 500 foot plot; another section of the ordinance provides that a building with attached garage must have 1,000 sq. ft. of living space, while with no such garage, the minimum requirement is 1,200 sq. ft., defendant's witness, the building inspector, stating that the reason was that the attached garage made for a better looking building; the evidence further established that the reason for the ordinance standard of a 24 x 32 foot structure with a content of 768 sq. ft. was the average for building applications and that standard dimensions of lumber were readily adapted to that size. Obviously, these considerations are wholly unrelated to either public health or the general welfare of the community.
The holding in Duffcon Concrete Products, Inc. v. Borough of Cresskill, supra, wherein our Supreme Court sustained an ordinance excluding heavy industry from the municipality, *500 was clearly justified under the facts; so, too, did the facts in Guaclides v. Borough of Englewood Cliffs, 11 N.J. Super. 405 (App. Div. 1951), amply support the validity of an ordinance prohibiting multi-family dwelling districts within the borough.
Here the factual situation, in my opinion, amply demonstrates that the minimum size requirement for one story dwellings is not reasonably related to the public health or general welfare of the community, but is arbitrary and unreasonable and not within the domain of the police powers of the defendant municipality.
While the court is loath to interfere in the internal affairs of any municipality and cannot, of course, properly substitute its judgment for that of duly elected and authorized representatives, I am forced to the conclusion that the provisions in the zoning ordinance respecting "Minimum Size of Dwellings" are wholly invalid with respect to Residence "A" and "B" Districts, in which plaintiff's property is situated, and must be set aside.